IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICHARD A. BRAVIERI,** <br> **B76536,** <br><br>       **Plaintiff,** <br><br> vs. <br><br> **RACHEL DODD,** <br> **DR. PHIL MARTIN,** <br> **JOSH LANE,** <br> **WEXFORD MEDICAL SERVICES,** <br><br>       **Defendant.** | Case No. 23-cv-819-DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Richard A. Bravieri, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center (Robinson), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights (Doc. 41). This case concerns Plaintiff's ongoing efforts to secure care for chronic hip and knee problems. Plaintiff's third amended complaint (Doc. 41) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1]

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or

---

[1] The Court previously allowed Plaintiff to proceed on a single claim against a doctor at an outside facility. (Doc. 10). Ultimately, that doctor successfully moved for summary judgment on the premise that he was not a state actor (Doc. 36), but the Court afforded Plaintiff a final chance to file an amended pleading to present any other related claims that he may have about his hip issues.

asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff first describes an encounter with a non-party doctor at Robinson on September 28, 2021, concerning chronic pain in his knees, and severe pain in his left hip. (Doc. 41 at 4). Wexford approved a referral to Crawford Memorial Hospital. On June 15, 2022, Plaintiff got a Celestone shot in each knee at the hospital but was informed he would need to be seen on another date for a hip injection.

On June 27, 2022, Plaintiff informed a non-party doctor that his left hip had not been addressed and that he was still in severe pain. (doc. 41 at 5). Plaintiff presented to sick call in December of 2022, and January of 2023, for complaints of ongoing and worsening hip pain. (Doc. 41 at 5; 18-21). The January 14, 2023, nurse's notes indicate that in July of 2022 a hip injection was approved, but as of January 2023, it had yet to be scheduled. (Doc. 41 at 20). The notes also indicate that an office visit should be scheduled soon for a reevaluation prior to the injection. It appears that on January 25, 2023, Plaintiff went to the orthopedic specialist (Doc. 41 at 21), and on February 1, 2023, he was seen for a follow-up of that visit and was scheduled for further follow-up to review x-rays.

On February 21, 2023, notes indicated that Plaintiff should be referred to the orthopedic specialist to evaluate the L hip for "THA" or total hip arthroplasty. (Doc. 41 at 22). On March 14, 2023, Defendant Lane noted that he spoke with the CMH Bone and

Joint about scheduling hip replacement and was advised it was an elective procedure that should be done once Plaintiff "gets out." (Doc. 41 at 30). The note further indicates, "cancelled per Dr. Becker." (Doc. 41 at 30). However, Plaintiff argues in his complaint that Lane's notation was a "blatant lie" because Dr. Becker never "signed off" on cancelling his surgery.

Plaintiff alleges he saw the doctor again on April 14, 2023, to address ongoing pain and scheduling for treatment. (Doc. 41 at 5). Plaintiff grieved the issue in June of 2023, and the grievance was "partially affirmed." (Doc. 41 at 6, 27). The grievance officer wrote that, per Defendant Martin (the healthcare unit administrator), offsite referrals were being scheduled by there was a backlog due to staffing issues for transportation purposes. (Doc. 41 at 27). The grievance officer also indicated an email was sent to Defendant Lane about Plaintiff's desire for care or hip surgery. (*Id.*).

On July 14, 2023, Plaintiff had an MRI that indicated further degeneration. (Doc. 41 at 6, 28-29). Dr. Becker's notes from July 20, 2023, indicate that Plaintiff had severe osteoarthritis, he was nearly unable to walk, and had already been referred and approved to Carle orthopedics. (Doc. 41 at 31). Dr. Becker directed a follow-up on the scheduling of the orthopedic appointment. At the time of filing the amended complaint in January of 2024, Plaintiff reported that he was wheelchair-bound, and was patiently awaiting surgery. (Doc. 41 at 31). He alleges that he also had severe new trouble with his right knee and ligaments behind his right leg that became problematic due to many months of walking off-kilter to accommodate his severe left hip pain. (Doc. 41 at 10).

Plaintiff further alleges the Defendants are Warden Rachel Dodd, Wexford Medical Services, Medical Director Phil Martin, and Director of Furloughs Josh Lane.  He states that these individuals were all aware of his serious medical need for surgery and adequate pain medication but were deliberately indifferent to his needs for at least 28-months.  (Doc. 41 at 6-7).  He argues that their delays caused him unnecessary suffering and pain.  (Doc. 41 at 7).

Plaintiff seeks declaratory, monetary, and injunctive relief.  (Doc. 41 at 7).  He sent a letter to the Court in late February wherein he indicated he had finally received hip surgery.  (Doc. 42).

Based on the allegations in the Complaint, the Court designates the following claim:

> **Claim 2:[2]**   **Eighth Amendment deliberate indifference claim against the Defendants for care provided from June 2022 to February 26, 2024, concerning Plaintiff's left hip injury.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

---

[2] The Court will refer to this new claim as Claim 2, because it previously designated a Claim 1 against Dr. Butler, who has now been dismissed.  (Docs. 10, 36).

## Analysis

Plaintiff's complaint is insufficient to state a claim against Wexford, because he does not have any factual allegations that specifically attribute his medical problems to Wexford as an entity. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). All that Plaintiff says about Wexford is that they were "aware" of his serious medical needs but were deliberately indifferent to those needs. (Doc. 41 at 6-7). This is not enough to maintain a *Monell* claim, so Wexford is dismissed.

By contrast, the Court will allow Plaintiff to proceed against Defendants Dodd, Martin, and Lane on the allegation that these three may have exhibited deliberate indifference to his need for care. While higher level administrators like Dodd and Martin are not always responsible for the direct provision of care, if an inmate alleges that they were personally aware of a need for care and either failed to adequate investigate or to exercise their authority to remedy a problem, they may be found responsible for their role in the medical issue. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).

Here, it appears from the attached grievances, and from Plaintiff's own allegations in the complaint that he made these officials aware of his need for care, but perhaps they failed to thoroughly investigate or did not exercise authority to assist him.

As to Defendant Lane, Plaintiff alleges that Lane falsely made a note in his chart that hip surgery was elective and could be postponed and that Dr. Becker agreed with the postponement, when in fact Dr. Becker was not consulted. Plaintiff submitted a record that showed Lane's note on the elective nature of the procedure. Plaintiff also submitted records that show that after Lane's note, Plaintiff was still sent out for an MRI, and after the MRI, a doctor noted that he should still have a referral for a surgical consultation and that the appointment should be reconfirmed by the facility. These later actions support an inference that perhaps Dr. Becker or other treating doctors did not think it was appropriate to delay surgery. Against this backdrop, Plaintiff may pursue his Eighth Amendment deliberate indifference claim against Defendant Lane on the premise that Lane may have allowed treatment to be deferred against medical advice.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 2** of the Third Amended Complaint (Doc. 41) survives initial screening as described above against Defendants Rachel Dodd[3], Phil Martin, and Josh Lane. By contrast, Claim 2 is insufficient as to Wexford Medical Services, and the Clerk of Court is **DIRECTED** to **TERMINATE** Wexford.

---

[3] Dodd was previously served in her official capacity only solely for the purpose of implementing any injunctive relief. She is now served in her individual capacity.

The Clerk of Court is **DIRECTED** to prepare for Defendants Rachel Dodd, Phil Martin, and Josh Lane: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Third Amended Complaint (Doc. 41), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs,

regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

The Clerk of Court is also **DIRECTED** to enter the standard HIPAA protective order in this case because it concerns medical care.

**IT IS SO ORDERED.**

Dated: March 26, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

<u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants'

counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.