IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| RICHARD BRAVIERI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-819-RJD |
| v. | ) | |
| | ) | |
| RACHEL DODD, PHIL MARTIN, and JOSH | ) | |
| LANE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Josh Lane's Motion for Summary Judgment on the issue of administrative remedy exhaustion (Docs. 63-65).   Plaintiff filed multiple Responses (Doc. 67, 71, and 72) and Defendant Lane filed a Reply (Doc. 69).   As explained further, Defendant's Motion is DENIED.   Also pending is a Motion for Entry of Default (Doc. 66) to which Defendants responded (Doc. 68) and is DENIED.   Plaintiff filed two Motions for Status (Docs. 59 and 74) that are GRANTED.

**BACKGROUND**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), alleges that that he was deprived of treatment or medications to alleviate his chronic arthritis and bursitis for more than two years at Robinson Correctional Center ("Robinson").   In September 2021, Plaintiff complained of chronic pain in his knees and "a new severe left hip pain" to Dr. Poor (not a defendant) at Robinson.   Doc. 41, p. 4.   Approximately nine months later, Plaintiff

Page **1** of **7**

received injections in both knees but was told by the orthopedic specialist that a hip injection "would be another procedure on another date." *Id*., pp. 4, 16, 17. Plaintiff spoke with nurses in December 2022 and January 2023 about his continuing severe hip pain and that he had never received the injection. *Id*., p. 5. On February 21, 2023, a staff member noted in Plaintiff's chart that he would be referred to an orthopedic specialist for potential hip replacement surgery. *Id*., p. 22. On March 9, 2023, Plaintiff filed this lawsuit, but he did not name Josh Lane as a defendant. Doc. 1, p. 1. Five days later, Defendant Lane noted in Plaintiff's chart that he spoke with "CMH Bone & Joint" and was advised that hip replacement surgery could be performed once Plaintiff is released from prison. Doc. 41, p. 30. Defendant Lane further wrote "canceled per Dr. Becker." *Id*. Plaintiff alleges that Defendant Lane fabricated the cancellation. *Id*., p. 7. Defendant Lane's job responsibilities in the health care unit at Robinson involve arrangements for off-site medical care. *Id*., pp. 7, 27.

On May 13, 2023, a nurse noted that Plaintiff was in severe pain and needed "urgent scheduling for MRI and treatment." *Id*., p. 23. Plaintiff submitted a grievance on June 14, 2023 that provided the following information:

> I've written three requests for my medical records I have never received them…also approximately seven weeks ago Dr. Becker scheduled me for urgent left hip MRI and surgery at Carle Hospital I am in #10 pain constantly. My left hip is crackling and popping in and out of its socket. It is excruciating pain. This has gone on for 1-year since Crawford Memorial Hospital was supposed to give me a Celestone shot in my left hip…Crawford's orthopedic doctor…said it had to be a separate procedure. I was sent eight months later back to Crawford Memorial Hospital and [the] orthopedic doctor refused to give me a Celestone shot in my left hip. Dr. Becker here at Robinson C.C. then scheduled me for immediate left hip surgery at Crawford Memorial Hospital and they said they would not do it! Dr. Becker then scheduled me for Carle Hospital. This was approximately seven weeks ago!

*Id*., pp. 25-26.    Defendant Phil Martin (health care unit administrator) responded to the grievance, stating that "Per Medical Records Director Lane-off site referrals are being scheduled but there is a back log and issues with staffing for transportation. I have sent Mr. Lane an Outlook message to look into this." *Id*., p. 27.    Plaintiff fully exhausted this grievance on August 11, 2023.    Doc. 64-1, p. 2.    He filed his Second Amended Complaint on December 20, 2023, alleging for the first time that Defendant Lane fabricated the March 14, 2023 medical records. Docs. 1, 13, 38.    On January 16, 2024, Plaintiff filed his Third Amended Complaint-currently the operative complaint-which contains his claim against Defendant Lane.    Doc. 41.    Following the Court's threshold review of Plaintiff's Third Amended Complaint (Docs. 41 and 43), Plaintiff proceeds on one claim of deliberate indifference against Defendants Martin, Dodd, and Lane. Doc. 43.    Only Defendant Lane moves for summary judgment on the issue of administrative remedy exhaustion.

## Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.    "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."    *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).    "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."    *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).    "[A]ll dismissals under § 1997e(a) should be without prejudice."    *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his

or her institutional counselor.   20 ILL. ADMIN. CODE § 504.810(a).   The grievance must contain

the following:

> …. factual details regarding each aspect of the offender's complaint,
> including what happened, when, where and the name of each person
> who is the subject of or who is otherwise involved in the complaint.
> This provision does not preclude an offender from filing a grievance
> when the names of individuals are not known, but the offender must
> include as much descriptive information about the individual as
> possible.

20 ILL. ADMIN. CODE § 504.810(c).   If the complaint is not resolved through a counselor, the

grievance is considered by a Grievance Officer who must render a written recommendation to the

Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when

reasonably feasible under the circumstances."   *Id*. §504.830(e).   The CAO then advises the

inmate of a decision on the grievance.   *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within

30 days to the Administrative Review Board ("ARB") for a final decision.   *Id.* §  504.850(a); *see*

*also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).   The ARB will submit a written

report of its findings and recommendations to the Director who shall review the same and make a

final determination within 6 months of receipt of the appeal.   20 ILL. ADMIN. CODE § 504.850(d)

and (e).   The inmate must complete all steps and follow the rules set by IDOC in order to exhaust

his administrative remedies and satisfy 42 U.S.C. § 1997e(a).

### Discussion

Defendant Lane acknowledges that Plaintiff fully exhausted the June 14, 2023 grievance

prior to filing the Third Amended Complaint, but contends that it does not encompass Plaintiff's

claim against Defendant Lane: that Defendant Lane fabricated the "canceled by Dr. Becker" note

in Plaintiff's medical records on March 14, 2023.   The Court notes that within the June 14, 2023

grievance, Plaintiff identified two issues: (1) that he had requested and never received his medical records; and (2) he had been waiting for over a year to receive off-site treatment for his severe hip pain.    In his Response to Defendant Lane's Motion for Summary Judgment, Plaintiff explains that he did not know that Defendant Lane had fabricated the note until he received his medical records through the discovery process in this case.    Doc. 67, p. 6.    Plaintiff does not give the date that he received his medical records, but service occurred on the original Defendants no earlier than June 8, 2023 and the HIPAA Order was entered on June 9, 2023.    Docs. 12, 14, 16.    Nothing in the record otherwise indicates that Plaintiff knew about the alleged fabrication when he submitted the June 14, 2023 grievance; in fact, Plaintiff wrote in the grievance that he had *not* seen his medical records.    Nonetheless, the grievance placed prison officials on notice that Plaintiff was not receiving off-site treatment for his severe hip pain, and the response from Defendant Martin notified prison officials that Defendant Lane was involved in arranging the off-site treatment. Doc. 41, p. 27.    Plaintiff was only required to include the information he knew at the time that he submitted the grievance.

Defendant Lane contends that once Plaintiff learned about the alleged fabrication, he should have submitted another grievance before filing a complaint that included his claim regarding the alleged fabrication.    However, Plaintiff's June 14, 2023 grievance had already given the prison the opportunity to correct the issue of providing offsite medical treatment for Plaintiff's severe left hip pain.    *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).    Plaintiff was not required to file another grievance about the ongoing issue.    *Id*.    Defendant fails to satisfy his burden on summary judgment and his motion (Doc. 63) is DENIED.

The Court notes that Plaintiff argues that his claim against Defendant Lane encompasses Defendant Lane's overall refusal/failure to arrange offsite treatment for Plaintiff and the alleged

fabrication is "only one small aspect of the claims against Defendant Lane."   Doc. 67, p. 3.   As the Court explained in the threshold review Order, any claim that is not addressed in the threshold review order is considered inadequately pled and dismissed without prejudice.   Doc. 43, p. 1. The Court only addressed Plaintiff's fabrication allegation against Defendant Lane in the threshold review order.   *Id.*, p. 6.

**Motion for Entry of Default (Doc. 66)**

Plaintiff asks the Court to "hold" Defendants Dodd and Martin "in default" because they failed to send their Initial Disclosures to Plaintiff, as ordered by the Court in the Initial Scheduling Order.   Defendants concede that they inadvertently missed their disclosure deadline.   Doc. 68. However, Defendants sent Plaintiff their Initial Disclosures after receiving his motion.   *Id.*, ¶6. Default is not a reasonable sanction for Defendants' late disclosures. *In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001).   Plaintiff's Motion is DENIED.

**Claim for Retaliation**

Plaintiff contends that, in an act of retaliation, "Officer Step" prevented him from entering the ADA gym on December 1, 2024.   The Court construes this pleading as a Motion for preliminary injunctive relief, but the only individual against whom Plaintiff seeks injunctive relief is a non-party.   The Court has no jurisdiction over Officer Step.   Even if it did, injunctive relief must be related to the underlying issues in the case.   *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994).   Plaintiff's "Claim for Retaliation" is DENIED.

**Motions for Status**

Plaintiff informs the Court that he is ready to "come before" the undersigned to litigate his claims, which the Court interprets as a Motion for Status.   Doc. 59.   Plaintiff also filed a Motion for Status.   Doc. 74.   These motions are GRANTED to the extent this Order provides Plaintiff

with an update on his case.   The Court also intends to rule on Plaintiff's Motion for Recruitment

of Counsel and enter a Scheduling Order after this Order is entered.

**IT IS SO ORDERED.**

**DATED:   March 31, 2025**


s/ *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**